IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MIKE SHALES, JOHN BRYAN Sr., AL OROSZ, DAN BREJC, TOBY KOTH and VERN BAUMAN as Trustees of THE FOX VALLEY LABORERS' HEALTH AND WELFARE FUND, <br><br> and <br><br> MIKE SHALES, JOHN BRYAN Sr., AL OROSZ, TOBY KOTH, VERN BAUMAN and DAN BREJC as Trustees of THE FOX VALLEY LABORERS' PENSION FUND, <br><br> Judgment Creditors, <br><br> v. <br><br> G.M. RANDA, INC. and GREG RANDA, individually, <br><br> Judgment Debtors, <br><br> HARRIS BANK, <br><br> Third-Party Citation Respondent. | Case No.:10-cv-7301 <br><br> Judge: Gary Feinerman |

## JUDGMENT CREDITORS' MOTION FOR
## A JUDGMENT OF CONTEMPT AGAINST HARRIS BANK

Judgment Creditors MIKE SHALES, JOHN BRYAN, Sr., AL OROSZ, DAN BREJC, TOBY KOTH and VERN BAUMAN as Trustees of THE FOX VALLEY LABORERS' HEALTH and WELFARE FUND ("Welfare Fund") and MIKE SHALES, JOHN BRYAN Sr., AL OROSZ, TOBY KOTH, VERN BAUMAN and DAN BREJC as Trustees of THE FOX VALLEY LABORERS' PENSION FUND ("Pension Fund") (collectively, "the Funds"), through their attorneys, Dowd,

Bloch & Bennett, pursuant to Federal Rules of Civil Procedure 64 and 69, 735 ILCS 5/2-1402, and Ill. Supreme Court Rule 277, respectfully move this Court for relief in aid of the execution of this Court's judgment of July 5, 2011 against Judgment Debtors G.M. Randa, Inc. and Greg Randa in the amount of $137,695.73. The evidence establishes that, after being served with a citation prohibiting Harris Bank from allowing any transfer of assets it was holding for the Judgment Debtors, Harris Bank made distributions of $12,207.28 from non-exempt amounts that it was holding for Greg Randa. Therefore, the Funds request that this Court find Harris Bank in contempt for failing to abide by the Third Party Citation to Discover Assets served upon it on July 20, 2011, and enter a contempt judgment against Harris Bank for the amount of the value of the property transferred in violation of the citation, plus attorneys' fees and costs incurred in bringing this motion.

In support of this motion, Plaintiffs state as follows:

1. The Funds brought this suit against Judgment Debtors G.M. Randa, Inc. and Greg Rand for delinquent contributions as revealed in an audit due to employee fringe benefit funds under Section 515 of ERISA, 29 U.S.C. § 1145 and enforceable under Section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185, and for breach of an installment note and for breach of a promise to obtain a $25,000.00 bond. The Funds are also suing The Randa Group, Inc. as a successor and alter ego of G.M. Randa, Inc.

2. On July 5, 2011[1], this Court entered a final judgment on the Funds' claims that G.M. Randa, Inc. and Greg Randa breached an installment note and breached a promise to obtain a $25,000.00 bond, entering judgment against them jointly and severally in the amount of $137,695.73 [Docket No. 41]. The parties continue to litigate the Funds' claims based on the audit delinquencies

---

[1] All dates 2011 unless otherwise noted.

and the Funds' claim that The Randa Group, Inc. is a successor and alter ego of G.M. Randa, Inc.

3. To date, the entire judgment balance remains outstanding.

4. On July 19, the District Court Clerk issued a Third Party Citation to Discover Assets against Harris Bank, regarding any amounts held belonging to Judgment Debtors. (A copy of the Third Party Citation to Discover Assets is attached hereto as Exhibit A.) Pursuant to 735 ILCS 5/2-1401(f) the citation stated that Harris Bank was "**PROHIBITED** from making or allowing any transfer or other disposition of, or interfering with, any property not exempt from the enforcement of a judgment therefrom, a deduction order or garnishment, belonging to the judgment debtor or to which it may be entitled or which may thereafter be acquired by or become due to him or it, and from paying over or otherwise disposing of any moneys not so exempt which are due or to become due to the judgment debtor, until the further order of the court or the termination of the proceeding, whichever occurs first."

5. On July 20, the citation was served on Harris Bank by messenger. Pursuant to 735 ILCS 5/2-1402, the citation was mailed to Judgment Debtors within three business days of the service upon Harris Bank.

6. On August 19, Harris Bank answered the Third-Party Citation admitting that it was holding $5,290.56 belonging to the Judgment Debtors. (A copy of the Answer is attached hereto as Exhibit B.)

7. Greg Randa filed a motion asserting his "wild card" exemption, 735 ILCS 5/12-1001(b), as to $4,000.00 of that $5,290.56 [Docket No. 49]. On August 30, the Court entered an order directing Harris Bank on how to disburse the $5,290.56: Harris Bank was to turn over

$4,000.00 to Greg Randa and turn over the remaining $1,290.56 to the Funds [Docket No. 56].[2]

8. As part of their continued litigation of the counts of the complaint not resolved by the July 5, judgment, the Funds had served on Harris Bank on August 12 a subpoena seeking all documents related to the bank accounts of Greg Randa, G.M. Randa, Inc., and The Randa Group, Inc. for the period of November 24, 2008 through the present (a copy of that subpoena is attached hereto as Exhibit C). On August 30, after the Court entered its turnover order of that date, the Funds received documents responding to that subpoena.

9. Among the documents that the Funds received on August 30 from Harris Bank was an account statement for Greg Randa's account with Harris Bank for the time period of July 9 through August 5 (a copy of that account statement is attached hereto as Exhibit D). That account statement revealed that, contrary to the prohibition in the citation, Harris Bank had allowed Greg Randa to transfer $12,236.98 out of the account on or after July 20, the date when the citation was served on Harris Bank, as follows[3]:

| July 20 | $111.98 |
| July 20 | $500.00 |
| July 20 | $150.00 |
| July 20 | $75.00 |
| July 21 | $3,500.00 |
| July 25 | $7,900.00 |
|  | $12,236.98 |

---

[2] To the Funds' knowledge, Harris Bank has neither been served with nor has complied with this August 30 order.

[3] The account statement also shows a withdrawal of $8,840.91 on July 21. The Funds do not challenge this withdraw, because that payment was rejected as based on insufficient funds, and thus was later offset by a deposit in the same amount. While the total of the transfer out of the account on July 25 was $8,850.00, the Funds contest only $7,900 of that amount, as is further explained below.

**Harris Bank Improperly Determined the Portion of the**
**Account Exempt as Unemployment Benefits**

10. Harris Bank has said that it permitted the withdrawals of July 20 and July 21 because, when it received the citation on July 20, it did not freeze the account, but rather determined what amount was supposedly exempt as resulting from unemployment benefits and set aside the remaining funds ($5,290.56) pending a court order on distribution. Harris Bank's citation answer made no reference to unemployment benefits or any amounts it claimed were exempt. (Harris Bank has said that it plans to amend its answer to the citation to identify that it allowed some funds to remain in the account as exempt unemployment benefits, but, to date, Harris Bank has not filed an amended answer.)

11. It is true that Greg Randa was depositing unemployment benefits in that account. On July 11, he deposited $451.00 in unemployment benefits into the account.

12. However, Harris Bank's calculation of the portion of the account consisting of unemployment benefits was incorrect. In fact, as of the July 20 service of the citation, the vast majority of the available funds were not from unemployment benefits, as follows:

(a) The last time prior to July 20 that the account received unemployment benefits was July 11, when it received $451.00 in unemployment benefits (Ex. D p.1).

(b) Four days later, on July 15, the account had been drawn down to $29.70.

(c) On July 18, there were two deposits, in the amounts of $22,854.40 and $715.17. As can be seen from records of those deposits also produced by Harris Bank pursuant to the subpoena (and attached hereto as Exhibit E), those deposits were not from unemployment benefits. There were no other deposits between July 15 and July 20.

(d) Thus, as of the July 20 service of the citation, all but $29.70 of the funds in the account were from the non-exempt July 18 deposits. And therefore Harris Bank's decision to allow the withdrawals on July 20 and 21 was based on an

inaccurate determination of what portion of the account came from exempt funds.

13. The Funds have been prejudiced by Harris Bank's incorrect decision to treat non-exempt funds as exempt, since, had Harris Bank properly treated those funds as non-exempt, they would not have been available for Greg Randa to withdraw and thus would have been available for turnover.

14. Further, Harris Bank's decision to permit Greg Randa to withdraw these funds was in violation of the citation's direction that Harris Bank was "**PROHIBITED** from making or allowing any transfer or other disposition of, or interfering with, any property not exempt from the enforcement of a judgment therefrom, a deduction order or garnishment, belonging to the judgment debtor or to which it may be entitled or which may thereafter be acquired by or become due to him or it, and from paying over or otherwise disposing of any moneys not so exempt which are due or to become due to the judgment debtor, until the further order of the court or the termination of the proceeding, whichever occurs first" (Ex. A).

**Harris Bank Improperly Failed to Place a Hold on Funds Deposited Into the Account**

15. On July 22, Greg Randa deposited $7,900.00 into the account. As can be seen from records of that deposit also produced by Harris Bank pursuant to the subpoena (and attached hereto as Exhibit F), that deposit was not from unemployment benefits.

16. Also on July 22, the account received $902.00 in exempt unemployment benefits (Ex. D p.1).

17. On July 25, Greg Randa withdrew $8,850.00 from the account, which necessarily included the non-exempt $7,900.00 deposited on July 22 (as well as the $902.00 in exempt unemployment benefits), since the account balance was reduced to $28.00 (Ex. D p.3).

18. This withdrawal of the $7,900.00 was prohibited by the citation which stated that Harris Bank was "**PROHIBITED** from making or allowing any transfer or other disposition of, or interfering with, any property not exempt from the enforcement of a judgment therefrom, a deduction order or garnishment, belonging to the judgment debtor *or to which it may be entitled or which may thereafter be acquired by or become due to him or it*, and from paying over or otherwise disposing of any moneys not so exempt which are due or to become due to the judgment debtor, until the further order of the court or the termination of the proceeding, whichever occurs first" (Ex. A; emphasis added). Thus, the citation's hold applied not just to money in the account as of July 20, but also applied to any money that came into the account. Cacok v. Covington, 111 F.3d 52, 53 (7th Cir. 1997).

**The Court Should Enter a Contempt Judgment
Against Harris Bank in the Amount of $12,207.28**

19. Illinois Supreme Court Rule 277(h) states that any person who violates a citation may be sanctioned and punished for contempt. The Seventh Circuit has held that under Rule 277, the court has "the discretion as to the nature of the sanction to impose for violating the order." Star Insurance Co. v. Risk Marketing Group, Inc., 561 F.3d 656, 663 (7th Cir. 2009) (citing Kennedy v. Four Boys Labor Services, Inc., 279 Ill. App. 3d 361, 664 N.E.2d 1088, 1094 (Ill. App. Ct. 1996)).

20. 735 ILCS 5/2-1402(f)(1) states:

The citation may prohibit the party to whom it is directed from making or allowing any transfer or other disposition of, or interfering with, any property not exempt from the enforcement of a judgment therefrom, a deduction order or garnishment, belonging to the judgment debtor or to which he or she may be entitled or which may thereafter be acquired by or become due to him or her, and from paying over or otherwise disposing of any moneys not so exempt which are due or to become due to the judgment debtor, until the further order of the court or the termination of the proceeding, whichever occurs first. The third party may not be obliged to withhold the payment of any moneys beyond double the amount of the balance due sought to

be enforced by the judgment creditor. **The court may punish any party who violates the restraining provision of a citation as and for a contempt, or if the party is a third party may enter judgment against him or her in the amount of the unpaid portion of the judgment and costs allowable under this Section, or in the amount of the value of the property transferred, whichever is lesser** (emphasis added).

21. Because Harris Bank clearly violated the restraining provisions of the citation, it should be held in contempt and this Court should enter a judgment against Harris Bank for the value of the property transferred.

22. In discussions with the Funds' counsel, Harris Bank has contended that its conduct was somehow justified by recently-enacted regulations governing how banks determine exempt funds: 31 C.F.R. § 212.1 - 212.12. But the scope of those regulations is explicitly limited to certain federal benefits, §212.2(b), so those regulations do not apply to Illinois unemployment benefits.

23. In discussions with the Funds' counsel, Harris Bank has contended that it would have been unduly burdensome for it to have calculated what amounts in the account are exempt, but has cited no authority for this argument. And anyway, Illinois law does not impose any such burden: Harris Bank should simply have frozen all funds that were in the account on July 20 or came into the account after July 20, "until the further order of the court or the termination of the proceeding, whichever occurs first." 735 ILCS 5/2-1402(f)(1).

24. Because Harris Bank failed to comply with the hold imposed by the citation, the Court should enter a judgment against Harris Bank in the amount of $12,207.28, which is "the amount of the value of the property transferred," 735 ILCS 5/2-1402(f)(1), specifically consisting of:

  (a) the total of $4,336.98 transferred out of the account on July 20 and 21 in various transactions (Ex. D pp. 2-3);

8

(b) the $7,900.00 non-exempt funds deposited into the account on July 22, then withdrawn, along with exempt unemployment benefits, in a $8,850.00 withdrawal on July 15; and

(c) not including the $29.70 remaining in the account as of July 15, which could have been the remainder of exempt unemployment benefits.

25. The Funds respectfully request that a contempt judgment be entered against Harris Bank for $12,207.28 which reflects the amount of assets that Harris Bank caused to be transferred out of the account after receiving the Citation, as well as attorneys' fees and costs that the Funds incurred in bringing this Motion.

26. As an alternative, the Funds do not oppose an amendment of the August 30, 2011 order, directing Harris Bank to transfer to the Funds the full amount of the $5,290.56 which Harris Bank identified as non-exempt, and applying the $4,000.00 "wild card" exemption, 735 ILCS 5/12-1001(b), to the first $4,000.00 of the $12,207.28 which Harris Bank allowed Greg Randa to withdraw from the account in violation of the citation hold, thereby reducing the contempt judgment against Harris Bank to $8,207.28.

Respectfully Submitted,

/s/ Josiah A. Groff
Josiah A. Groff
One of Judgment Creditors' Attorneys

J. Peter Dowd (#0667552)
Michele M. Reynolds (#6237957)
Jeremy M. Barr (#6299047)
Josiah A. Groff (#6289628)
**DOWD, BLOCH & BENNETT**
8 S. Michigan Avenue--19th Floor
Chicago, IL 60603
312-372-1361

September 27, 2011